IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| JASON LEO BENTLY,<br><br>  Plaintiff,<br><br>vs.<br><br>SUMMIT TOWER SOLUTIONS,<br>LLC and JAMES WESTERHOFF,<br><br>  Defendants. | No. C15-2111<br><br>REPORT AND RECOMMENDATION |

On March 14, 2016, Judge Edward J. McManus referred this case to me "to determine if jurisdiction exists." Specifically, the matter was referred "for a Report and Recommendation on whether the amount in controversy under 28 U.S.C. § 1332(a) is met in this case." *See* Order (docket number 14) at 7. Both sides have filed briefs asserting that the jurisdictional threshold of $75,000 has been met.

## I. PROCEDURAL HISTORY

Plaintiff Jason Leo Bently filed a petition at law in the Iowa District Court for Black Hawk County seeking judgment against Defendants Summit Tower Solutions, LLC ("Summit") and James Westerhoff. Bently claims damages for breach of contract (Count I), wrongful termination in violation of public policy pursuant to Iowa law (Count II), wrongful termination in violation of public policy pursuant to Oklahoma law (Count III), unpaid wages in violation of the Iowa Wage Payment Collection Act (Count IV), and unpaid wages in violation of the Oklahoma Wage Recovery Act (Count V). The action was removed to this Court on December 28, 2015.

On January 7, 2016, Defendants filed a motion to dismiss asserting a lack of personal jurisdiction. Alternatively, Defendants asked the Court to transfer venue to the

United States District Court for the Western District of Oklahoma. On March 14, 2016, Judge McManus denied Defendants' motion to dismiss, concluding Defendants had "sufficient contacts with Iowa to allow this Court to exercise personal jurisdiction."[1] In ruling on Defendants' motion to dismiss, Judge McManus raised *sua sponte* the issue of whether the federal court has subject matter jurisdiction in this case.

## II. BACKGROUND

According to an affidavit filed by Westerhoff in support of Defendants' motion to dismiss, Summit was in the business of "general cell tower contracting." Westerhoff is the "owner" of Summit. On about March 24, 2014, Summit hired Bently pursuant to an Employment Agreement. While the agreement is somewhat imprecise regarding Bently's duties, it provides for an annual salary of $156,000, plus potential bonuses. The initial term of the agreement was 3 years, although Bently could terminate the agreement by giving 90 days notice. Summit could terminate the agreement "immediately" for cause, or could terminate the agreement without cause by providing seven days written notice to Bently. Bently's employment with Summit was terminated during the last week of November, 2014.[2] According to Westerhoff, Bently was notified of his termination by email. In an affidavit filed in resistance to Defendants' motion to dismiss, Bently asserts he was terminated from his employment without good cause and without seven days written notice.

---

[1] Meanwhile, on February 29, 2016, Summit filed for Chapter 7 bankruptcy protection in the Western District of Oklahoma and the case is stayed against Summit pending a resolution of the bankruptcy proceeding.

[2] In his petition, Bently claims he was notified of his termination on November 24, 2014. In his resistance to Defendants' motion to dismiss, Bently avers he was terminated "around November 26, 2014." In his affidavit, Westerhoff states Bently was terminated on November 29, 2014.

2

## III. DISCUSSION

A federal district court has jurisdiction over any civil action between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a)(1). Here, it is undisputed that the parties are citizens of different states. Bently is a citizen of Iowa, while Summit is an Oklahoma company and Westerhoff is an Oklahoma citizen. The issue raised by Judge McManus, however, is whether the amount in controversy exceeds $75,000.

Both parties assert the recoverable damages for all counts may potentially reach the $75,000 threshold. Nonetheless, the parties recognize that "jurisdiction may not be conferred by consent and lack of jurisdiction of the subject matter cannot be waived by the parties or ignored by the court; if jurisdiction is lacking the trial court should on its own motion decline to proceed." *Pacific Nat. Ins. Co. v. Transport Ins. Co.*, 341 F.2d 514, 516 (8th Cir. 1965). Accordingly, notwithstanding the parties' joint assertion that the amount in controversy exceeds $75,000, the Court must make an independent judgment in that regard.

The amount claimed by a plaintiff is the "amount in controversy" if the claim is "apparently made in good faith." *Hedberg v. State Farm Mut. Auto. Ins. Co.*, 350 F.2d 924, 928 (8th Cir. 1965). To justify dismissal for lack of jurisdiction, "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)).

### A. Breach of Contract

In Count I, Bently asserts generally that "Defendant [*sic*] breached the Contract," and asks for judgment in "an amount which will fairly and adequately compensate him for the damages caused by Defendants." While the petition is imprecise, the breach of contract claim apparently rests on Bently's allegation that he did not receive the required seven-day notice prior to termination. Bently claims that "he is entitled to the salary he

3

would have received from the date of his termination on November 26, 2014 through the end of the three-year contract on March 24, 2017."[3] Defendants argue, on the other hand, that "should Plaintiff ultimately prevail solely on his breach of contract claim, his damages would be nominal and would not satisfy the monetary threshold required to support this Court's subject matter jurisdiction under 28 U.S.C. § 1332(a)."[4] If Bently's damages are limited to one week of unpaid salary, then he is owed only $3,000, plus reasonable attorney fees.

The only case cited by either party regarding the measure of damages in a breach of contract action is *Norton v. Caremark*, 20 F.3d 330 (8th Cir. 1994). Bently claims *Norton* supports his argument that because Defendants failed to give a seven-day notice of termination, Bently is entitled to lost income for an additional two-and-a-half years. I believe *Norton* is easily distinguished from the instant action. There, the employer terminated the employee without following required "progressive discipline" procedures. The employer argued that the employee "is, at most, entitled to compensation for 120-150 days, the period of time it would have taken them to terminate him pursuant to progressive discipline procedures." *Id.* at 340. The Court, applying Minnesota law, rejected the employer's argument, reasoning that if the progressive disciplinary steps had been followed, with the employee "warned and given an opportunity to mend his ways," then he may have been able to retain his employment. *Id.* In this case, however, there was no progressive discipline procedure. The employment contract permitted Summit to terminate Bently immediately with cause. At most, if cause did not exist for Bently's termination, then Bently was entitled to seven-days notice. Either way, Bently was not entitled to a

---

[3] Bently's Brief Regarding Subject Matter Jurisdiction (docket number 17) at 3.

[4] Defendants' Brief Regarding Subject Matter Jurisdiction (docket number 18) at 1.

4

"warning," would not have an opportunity to "mend his ways," and would not have been able to retain his employment.

The employment agreement provides that it shall be governed and construed in accordance with the laws of the state of Oklahoma. Neither party cited any Oklahoma law regarding damages in a breach of contract claim (nor, for that matter, did they cite any Iowa authority). A common measure of damages for breach of contract is placing the innocent party in the same position as if the contract had been fully performed. *Florafax Intern., Inc. v. GTE Market Resources, Inc.*, 933 P.2d 282, 292 (Oklahoma 1997). *See also Midland Mut. Life Ins. Co. v. Mercy Clinics, Inc.*, 579 N.W.2d 823, 831 (Iowa 1998) ("Under Iowa law, when a contract has been breached the nonbreaching party is generally entitled to be placed in as good a position as he or she would have occupied had the contract been performed."). Here, if the contract had been "fully performed," Bently was entitled, at most, to a seven-day notice prior to termination. Assuming he was not fired for good cause, and was therefore entitled to a seven-day notice, I believe his measure of damages would be his salary for those seven days ($3,000). Accordingly, Bently's breach of contract claim alone does not provide federal jurisdiction.

### B. Statutory Wage Claim

Counts IV and V of Bently's petition are also founded on Bently's claim for unpaid wages. Bently asserts that Defendants' failure to pay him "earned wages as of today's date and continuing" violates both Iowa and Oklahoma wage payment statutes. As set forth above, I do not believe Bently is entitled to wages "as of today's date and continuing," but is instead entitled to one week's lost wages resulting from his failure to receive a seven-day notice. Iowa Code Chapter 91A, known as the "Iowa Wage Payment Collection Law," provides a remedy to employees who do not receive wages which are due. If an employer intentionally fails to pay an employee wages, then "the employer shall be liable to the employee for any wages or expenses that are so intentionally failed to be paid or

reimbursed, plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages." Iowa Code § 91A.8. Similarly, 40 Okl. St. Ann. § 165.9 authorizes an employee to bring an action to recover unpaid wages and liquidated damages, plus reasonable attorney's fees.

In Iowa, "liquidated damages" are defined in Chapter 91A as five percent of the unpaid wages times the number of days that the wages were overdue. Importantly, however, "such sum shall not exceed the amount of the unpaid wages and shall not accumulate when an employer is subject to a petition filed in bankruptcy." § 91A.2(6). Accordingly, if Bently is entitled to $3,000 for unpaid wages, then he may be entitled to an additional $3,000 in liquidated damages. Similarly, Oklahoma law provides an employer "shall be additionally liable to the employee for liquidated damages in the amount of two percent (2%) of the unpaid wages for each day upon which such failure shall continue after the day the wages were earned and due if the employer wilfully withheld wages over which there was no bona fide disagreement, or in an amount equal to the unpaid wages, whichever is smaller." That is, liquidated damages under Oklahoma's wage collection statute is limited to $3,000. Furthermore, I believe Bentley's recovery would be limited to either his contract claim or one of his statutory claims. Accordingly, Counts I, IV, and V, either singly or in combination, do not reach the $75,000 threshold to establish federal jurisdiction.

### C. Wrongful Discharge

In Counts II and III of his petition, Bently asserts common law claims for wrongful termination in violation of public policy. According to Bently, he suffered a work-related injury on about August 29, 2014, but was told by Westerhoff not to report it because it would have an adverse effect on Summit's workers' compensation premium. Bently eventually reported his injury on November 19, 2014, and told Westerhoff on November 21 that he required a medical leave of absence. Bently was fired a few days later.

6

In 1988, the Iowa Supreme Court concluded that a cause of action should exist when an employee is terminated for exercising a "well-recognized and defined public policy of the state," including the right to seek compensation for work-related injuries. *Springer v. Weeks and Leo Co., Inc.*, 429 N.W.2d 558, 560 (Iowa 1988). Damages in an action for wrongful discharge may include "mental distress" in addition to lost earnings. *Niblo v. Parr Mfg., Inc.*, 445 N.W.2d 351, 355 (Iowa 1989). Furthermore, in appropriate cases, punitive damages may be awarded for wrongful discharge. *Tullis v. Merrill*, 584 N.W.2d 236, 241 (Iowa 1998). Accordingly, on his claim wrongful termination in violation of public policy pursuant to Iowa law (Count II), Bently is potentially entitled to lost wages, mental or emotional distress, and punitive damages.[5]

It seems somewhat unlikely to me that a jury would find Bentley's damages exceed $75,000. I believe Bentley's recovery on Counts I, IV, and V will likely not exceed $6,000, plus reasonable attorney fees. Because Bentley's employment agreement did not provide long-term security, I also believe his recovery on Count II (or Count III), if any, will be limited. That is, absent Bentley's alleged termination for asserting a worker's compensation claim, Bentley could have been terminated without cause and with only seven-days notice. Under those circumstances, it seems doubtful to me that a jury would award substantial emotional distress or punitive damages. Nonetheless, I cannot state "to a legal certainty" — the standard set forth in *Hedberg* — that Bentley's claim will not exceed $75,000. Accordingly, I believe federal jurisdiction exists in this case.

---

[5] While the employment agreement provided that it would be governed and construed in accordance with Oklahoma law, it may be that Bentley's common-law claim of wrongful termination would be governed by Iowa law. In discussing the measure of damages in a wrongful termination case, neither party cited any Oklahoma authority. The parties did not brief the choice-of-law issue, however, and I make no judgment on whether Iowa law or Oklahoma law would apply to Bentley's common-law claim of wrongful termination in violation of public policy.

7

## IV. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court find that the jurisdictional threshold found in 28 U.S.C. § 1332(a) is met in this case and federal jurisdiction exists. The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court.

DATED this 6th day of September, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA